This is Judge Cabranes in New Haven, and on this teleconference, we have, of course, Judge Raji and Judge Manashi, and we're prepared to proceed orally pursuant to the approved calendar for October 14, in which each side is given the opportunity to argue for approximately 15 minutes. We'll hear first from Mr. Rizzi, who has reserved three minutes for rebuttal. I should warn you that the clerk is authorized to indicate when necessary any lapse of time, or you may have an interruption along the way, and also, of course, the judges may interrupt with questions. So we're going to proceed in the normal course, except that it's by teleconference. Mr. Rizzi? Your Honor, Mr. Mintz speaking, and I apologize for interrupting, but I was speaking with the clerk earlier and was asked to just alert the court and the panel of just something logistical, and if I may. My client and Ms. Golan were both directed to appear by telephone for these arguments. My client is in Italy, and he's at his Italian lawyer's office, and his Italian lawyers are on the call. I spoke with the clerk earlier, and he just advised me to alert the panel of that fact. That's very helpful. Thank you. Mr. Rizzi? Thank you, Your Honor. This is Carl Rizzi of Paul Weiss for the appellant, Ms. Golan, and as the court requested, Ms. Golan is also on the line as well. May it please the court, this is the third appeal in this Hague Convention case, which centers around the safety of Ms. Golan's young child. Here, Ms. Golan obtained a new audio recording suggesting that the child's father, Mr. Sada, hired an investigator to secretly follow Ms. Golan and the child during this case in defiance of the district court's instruction not to make any effort to find her. Yet the district court accepted Mr. Sada's version of events on the basis of his counsel's representations and without holding a hearing. That was an abuse of discretion. Previously, the district court found that Mr. Sada is violent and abusive, that he threatened to kill Ms. Golan, and that he could not control his anger. Nevertheless, the district court ordered the child to return to Italy, where Mr. Sada lives, on the assumption that Mr. Sada was likely to comply with a protective order entered by the Italian courts, which requires Mr. Golan to stay away from Ms. Golan. The newly discovered audio recording called that premise into question, but the district court ignored Ms. Golan's concerns and refused to hold an evidentiary hearing. That was an abuse of discretion, it places Ms. Golan and the child in danger, and I urge this court to remand for an evidentiary hearing. There are four reasons to remand. First, the audio recording raises a material issue of fact as to whether Mr. Sada had Ms. Golan secretly followed. A hearing is required to resolve this factual dispute. Second, it was improper for the district court to resolve this factual dispute in Mr. Sada's favor based on the limited representations of his counsel. That is not an adequate substitute for a hearing. Third, the district court's actions are inconsistent with the Hague Convention, under which the protection of the child is paramount. Fourth, the district court failed even to explain its reasoning for not holding a hearing. There is also no reason to affirm on alternative grounds, as Mr. Sada suggests in his brief. Neither the admissibility of the evidence, nor Ms. Golan's due diligence are issues that would be appropriate to address for the first time on appeal. In any event, the evidence is admissible under the Hague Convention, and Ms. Golan cannot possibly be faulted for not obtaining this evidence sooner because Mr. Sada intentionally shielded this information from Ms. Golan. Therefore, this court should vacate the district court's order and remand with instructions to conduct an evidentiary hearing for the safety of Ms. Golan and the child. Unless the court has questions, I will go on to discuss why the audio recording created an issue of material fact. Before you say that, could you explain why that's the standard? Under Rule 60B, you need to show that the evidence is admissible and of such importance that it would have changed the outcome of the trial. If we have a standard that says the district court needs to conduct a hearing whenever there's any question of fact, wouldn't that make it essentially like a summary judgment motion? Wouldn't that lower the standard? That wouldn't lower the standard for ultimately prevailing on the Rule 60B motion. It's a principle that runs through this court's cases, including in Vindigny and Flax, that whenever there's a material issue of fact in dispute, even in a Rule 60B motion, that requires the court to have a hearing to resolve the material issue. Comparing this to summary judgment, though, Your Honor, as you noted, in a summary judgment motion, all inferences would be drawn in the non-movement's favor because the non-movement is the one who wants the case to proceed to a hearing. Here, we're the party asking for a hearing, so it makes sense to draw inferences in Ms. Golan's favor when trying to determine whether a hearing is required. Why is it necessary to draw inferences in anybody's favor? Why doesn't the district court get to evaluate what it thinks is the right version of events? Well, it could do that, but in order to actually make factual findings, it would need to have a hearing in order to assess credibility. Here, it just decided on the basis of counsel's representations, which were inadequate for multiple reasons. Well, it made a decision about credibility, right? The district court says in its order that it finds the lawyer's representations to be credible, right? I mean, there was a determination about credibility. The lawyers did appear before her, so what else would happen at a hearing to add to the district court's ability to make a credibility determination? I would answer that in two parts. First, the district court did make a credibility determination, but in general, in order to make a credibility determination, a cross-examination is necessary, and there was no cross-examination in the one telephone conference that the district court had with the lawyers. And even if Mr. Sada's counsel is credible, it's still improper to rely on his representations because many of his representations depend on what Mr. Sada told him. They were not within his own personal knowledge, and the district court had already determined that Mr. Sada himself is not credible, so it was inappropriate to rely on his counsel's representations. His counsel's representations also left details about the investigation unanswered. They were vague and not fully forthcoming. So to rely on just those limited representations in lieu of a hearing was an abuse of discretion. And second, as to what a hearing would add to this, so in a hearing, we could hear from the investigator that counsel referred to and hear what the investigator actually did, who they followed, what possibly they reported to Mr. Sada. At a hearing... This is Judge Radji. Let me make sure I'm clear on this. I thought the district judge was concerned that your client's assertions were too vague to warrant relief, and the concern I have is you're saying that the recording shows that she was followed. I'm not sure that that is what the recording shows. It shows that he obtained information and that he had investigators. Am I missing something in the recording that establishes that your client was followed? Or that's an inference you're urging? I think if you take what he says at face value, it would imply that he had her followed. He says, I know from information, I cannot tell you how, with investigators, that people told me she brings men to her place to have sex with her different men. I have pictures of my son. Let me suggest something else to you. I mean, he had information from someone who was an associate of your client who contacted him. He could have followed that person and found whatever he found about your client. My point is simply, you're saying he had her followed. But I don't think that's clear. I thought the district court was in the end concluding that none of this really would make a difference to its original decision, given that your client ultimately gave up her address to her spouse or former spouse. Is that what the district court was saying? Because the concern of the original order, and I know there's some dispute whether it was an order, but the district court assumed it, was that there not be any placing of this woman in danger. And the district court in the end concluded, well, this was not a concern here because she voluntarily told him her address. What am I missing? So there are two parts to that, Your Honor. First, I think from the recording, it does suggest that he had her followed. If you look at what he said, it doesn't square with the representations of his counsel. So his counsel said that he received pictures from this Mr. Hazan, and in response to that, they opened an investigation. But if that's the case, it makes no sense for him to bring up in this conversation with the rabbi that he knows from investigators what she did in her apartment. That investigation allegedly took place after he received these photos. So it doesn't make sense for him to bring up the investigators unless he learned information about her from them. And second, as to whether it would make a difference, the district court never actually said, you know, even assuming it's true that Mr. Saa hired investigators, I would still deny the motion. It never says anything like that in its opinion. It simply resolves the factual dispute in Mr. Saa's favor by saying, you know, this limited investigation would not have changed my opinion. But the whole point here is that his conduct suggests we can't have confidence that he won't endanger her in Italy to the detriment of the child. And my question to you is, in circumstances where she gave him her address, how is that conclusion one that not only can be drawn but must have been pursued by the district court? Because it's his actions that are relevant to the inquiry. So if he hired an investigator to follow her, that suggests that he is not going to abide by court orders, whether here or in Italy. And so if he doesn't abide by the Italian order, that should call into question the district court's return order. But in a way that endangers her. Isn't that the point? Fails to abide by orders that in a way that endangers her. Yes. And here, how did that occur if she was willing to give him the address? Because her giving him her address in the United States is not at all equivalent to her giving him an address in Italy. In Italy, she's far more vulnerable and he has far more resources. She gave him her address during the pandemic just to send supplies to her child. So and at that time, she also did not know for a fact that he had also hired investigators to follow her. So to use that against her, it would just not it's really not relevant. What's relevant are his actions and his actions in possibly hiring an investigator do suggest that she would be in danger in Italy. I mean, hiring an investigator is an indicia of stalking. It's something that is done by abusers. It's a common tactic of theirs. So all this suggests that he's going to violate the orders in Italy. Well, your argument is not that hiring an investigator inherently indicates dangerousness. Your argument is that hiring the investigator violated the court order. Right. So it's about the degree of compliance with court orders. One minute. Are you asking us to conclude that anybody who hires an investigator is always a danger? I would say that not everyone who hires an investigator is in danger. Obviously, it depends on what the investigator does. If the investigator just does a public record search, that may not be the same as an investigation. So isn't the question really whether the hiring of the investigator, if it happened, was consistent with the district court's order or purported order? And didn't the district court here say in construing its order that the order was about using the supervised visitation to find out her address? And so what the district court said expressly, it didn't see a violation of the order. Shouldn't we trust the district court as to the scope of its order in the first place and whether there was a violation? I would say our argument does not depend on the district court's order being an order or a directive. It actually is about whether his actions in hiring the investigator. The district court said that the directive was about discovering her address in the context of supervised visitation. And so the district court seems pretty clearly to think that even hiring an investigator outside of that context is not a violation of the directive. So why should we second guess that determination? The district court never said that even if he hired an investigator, that it would have denied the motion. Again, it made a factual finding about the scope of the investigation. So we actually don't know for sure what the district court thought. But I would just say that the key question is not really whether it's a directive or an order or what the scope of it was, but whether his newly discovered actions call into question the previous order. We submit that the answer to that is yes. And I think I see that my time has expired. Mr. Rizzi, this is Judge Cabrera. I have a couple of simple questions concerning the state of the record, and I hope you can help me. Sure. You fault your opponent for not submitting any admissible evidence. Is that right? Yes. You're concerned about that. All right. Yeah. Did you submit any affidavit or other admissible evidence alongside your Rule 60B motion? No, we submitted the transcript of the recording. We did not submit an affidavit from the rabbi, which is not required under the Hague Convention. But I would also note that the district court never requested an affidavit and did not hold the hearing that we requested. Did you present any evidence to authenticate the purported audio transcription of the November 2020 phone call? Did we? Hello? Yeah. To put it another way, what exactly did you submit to authenticate the transcription of the phone call? We did not submit anything because under the implementing legislation of the Hague Convention, there is no authentication requirement for evidence. Yes. Well, let me ask you to get to the point of why you're here. What is it that you want from us? What is the decree of this court that would provide you with the relief that you think you're entitled to? We would ask that the court remand for an evidentiary hearing. That is the request that we're asking for, and we do not think it requires any sort of broad ruling. It can be a very narrow holding. What I'm interested in learning is where exactly is this litigation headed in your view? If it is remanded to Judge Donnelly, what is it that you think you're going to achieve before Judge Donnelly? What is it that you hope to achieve? Well, we would have an evidentiary hearing. The investigator and perhaps Mr. Sada would testify as to what Mr. Sada learned from the investigation, what he meant in that recording, and either it would come out that he hired investigators to follow her and Judge Donnelly may reconsider her order and decide to deny the petition because there is no set of ameliorative measures that can ensure his compliance with the Italian order in Italy, or it could turn out that he did not hire investigators to follow her, in which case the return order would stay in effect, and our last recourse would be our current pending petition to the Supreme Court. Now, let me go back a bit just to make sure I understand the state of the record. You're not contesting the representations of opposing counsel, that it was counsel, not Sada, that hired the investigator. Is that a fair statement of the record? That's somewhat fair. I would say that that's incomplete because we have no reason to question opposing counsel's honesty, but, of course, counsel only knows what he knows, and it's possible that Mr. Sada hired a different investigator that counsel doesn't know about. What we can learn through a hearing is what other investigators may have existed and what he may have learned from them. Thank you very much, Mr. Rizzi. You've reserved three minutes. I've given you a few extra minutes, and we thank you very much.  Thank you, Your Honor. May it please the Court, Richard Min speaking on behalf of Appellee Izako Jackie Sada. Ms. Golan's Rule 60B motion we contest is based on immaterial facts. They were not newly discovered. They were based on potentially inadmissible evidence, and they were undercut by her own actions by providing Mr. Sada the address where she was residing, which undercuts any argument that she was concerned or felt that she was in danger. Moreover, the actions that were undertaken were not in violation of a district court directive, let alone a court order. Even assuming all of these factors in Appellant's favor, that she had recently discovered the facts in question, that the evidence was admissible, that Mr. Sada did violate an order, the district court still found that it was not established that, quote, that the protection put in place in Italy will be insufficient to protect BAS from a grave risk of harm. The district court further refused to, quote, undo months of intercession and the implementation of protections by the Italian courts, as well as undertakings between the parties. The district court has now been overseeing this case for over three years. The district court is in the best position to evaluate the parties, to evaluate the issues in this case, the concerns of the parties, and especially the dangers presented to this particular child. It's certainly in the best position to interpret its own directives and orders. And with respect to the directive in question that Appellant's counsel seeks to rely on, the district court, in their decision, assumed for the purposes of argument that it was a directive, but in their footnote acknowledged that it could simply be interpreted as a warning in the context of supervised visitation. And during that time, the parties were negotiating a visitation schedule. The parties worked out a visitation schedule. Neither party sought an order of protection, and the court issued no order of protection in this case. In fact, the district court, in their memorandum decision on the Rule 60B motion, noted that the parties' relationship during the past 18 months appears to have been commendably civil, given their turbulent history. And it was within that context that Ms. Golan provided the address to Mr. Sada. And when Ms. Golan provided two addresses to Mr. Sada during the course of these proceedings, Mr. Sada did nothing. There's no evidence that in three years Mr. Sada ever put Ms. Golan in any danger, ever put the child in any sort of danger. He's visited the U.S. on multiple occasions, has had extensive visitation with his child, and those visitations have always gone extremely well. He's had several opportunities within supervised visitation, although the drop-offs and pickups are staggered, where he was in the same vicinity as Ms. Golan, and no issues ever arose. The district court is in the best position to determine whether certain evidence, newly discovered or not, is of such import that it could potentially, not even probably, overturn the outcome that it has reached now on two separate occasions. The district court refused to make such a finding, and its decision should be given great deference. What about the question that when there's a factual dispute where the interpretation of the facts could go either way or the parties don't agree on the facts, that the district court should make inferences in favor of the party who wants the proceedings to continue, and so the district court should not have resolved those disputes without having a hearing? I think there's a reason. I think the court did make reasonable inferences in light, in favor of appellant, but as this court, I think, on one of the questions asked, and we would agree, Ms. Golan's, the recordings that Ms. Golan provided, did not establish what she's alleging it established. The brief and the summarization of those recordings says, I learned from investigators, but the from investigators is separated by inaudible audio, other words. What Mr. Sada said is, I have pictures with my son with different men, don't worry, I cannot tell you how I know, but I have proof, dot, dot, dot. The lawyers who, inaudible investigators, dot, dot, dot, so I know. Mr. Sada, whose first language is not English, who requested the services of interpreter during I understand, so that's consistent maybe with what your client says, which is he might very well have said, you know, I got the, it's consistent with the story where he got the photos from third parties, and then maybe he said investigators in coordination with the lawyers checked it out, which is the story that the district court thought was the accurate one. But, you know, opposing counsel just said, well, maybe he hired some other investigator, and we don't really know for sure, so if there's a dispute about that, why shouldn't the district court have held a hearing? Because I don't, I think that for, to rely on allegations not based upon credible evidence on a motion would not be the standard that the district court should be held to. A movement coming in and saying, you know, I allege that certain things happen, with no evidence to support that those things actually occurred, or evidence that does not strongly support that such things occurred, I think would be, is not the standard that a district court is, where a district court would have to hold an evidentiary hearing. Well, something occurred, right? So after, so the district court, you just had to introduce evidence about the third parties who provided the photos and the limited investigation that you say your client's lawyers, I guess, that you undertook. So something happened. The district court did consider evidence on the point. I guess my question is, is there a reason for thinking the inferences should go a certain way, and that if there's a dispute, there should be a hearing, and if not, why not? Well, I mean, I think the district court did give credence to Ms. Golan's allegations, and I think she said that in her decision that even if she were to take those allegations as true, it would not rise to the level where it would overturn her decision. And I think that's the question that needs to be answered. Ultimately, in order to succeed on a Rule 60B motion, you have to have, of course, the factors, the newly discovered evidence, the admissible evidence, but that the evidence is of such importance that it would probably have changed the outcome of the case. And I think that is ultimately what the district court relied on in denying the Rule 60B motion. Yeah, but the district court did say knowledge of the limited investigation that took place would not have changed the outcome of my May 5, 2020 order. So she did make a determination that actually it was the limited investigation that your client said it was. And so that is a factual determination, right? I mean, you don't dispute that the district court made a determination about the nature of the investigation. Understood, but Appellant also does not have any evidence or make any allegations that it was not limited, right? So the district court is not, on one hand, having any evidence that there was some sort of grand investigation or anything beyond the limited investigation where the district court has to decide between two competing versions of events. There's essentially a vague allegation being made where they seek to go on what we would call a fishing expedition to see if there's more than what there purports to be, where the evidence that was presented to the court was that there was a limited investigation based upon a third party presenting admittedly very strange and, you know, uncredible allegations, but of course of a serious nature. The timing of those, the third party allegations, timing of the limited actions were a cause and effect relationship. So I don't think the district court had to choose between two competing arguments. Appellant raised a question, an answer was provided, and the district court was satisfied with that answer. Your Honor, I think if there's no further questions, we would see the rest of our time and rely on our papers. Let me just ask again in the nature of trying to understand what the record consists of here. You did not submit any affidavits or other evidence to corroborate your explanation of the investigation. Is that right? Your Honor, we did submit the correspondence that was received from the third parties as part of the motion practice in the district court. So to the extent that we provided the correspondence where the third party sent, I think, audio or video and images and the text correspondence about, you know, who he is and with, you know, photos of him with the child, presumably in Ms. Golan's apartment. We provided correspondence between the parties where she provided her address, but we did not provide an affidavit, and that is correct, yes. All right. And you want us to rely on the representation of counsel, or are we required to rely only on admissible evidence? Your Honor, I mean, I think the district court relied on representation of counsel. We think that was appropriate. And, of course, we would, you know, argue that there's no basis to overturn that on our representation and, of course, on the district court's reliance on that representation. Is that an extension of your adversary's argument that in Hague Convention proceedings, evidence need not be authenticated? Or are you urging something different when you talk about counsel's representations? Well, it's not our – I will say on a Rule 60B motion, it's not our burden of proof to demonstrate admissible evidence that would be of such import to probably overcome the outcome. So it's not our burden to provide admissible evidence. You know, I would agree the district court did not ask for any such admissible evidence, but, you know, I think the difference is that we don't have such a burden. Well, but there are many proceedings in which a party doesn't have a burden, but when he or she offers evidence, if admissibility is applicable, you have to demonstrate it. So I'm not sure whether you two are relying on this provision of the Hague Convention that does not require authenticated evidence. Right. No, I'm not relying on that provision. I would state that, you know, that provision I don't believe is a blanket provision, that there's no authentication necessary in all respects. But putting that aside, to the extent that no one provided admissible evidence, I think that's enough to defeat a Rule 60B motion. And I think that's my point. I understand Your Honor's point, of course, and, you know, I, of course, can have to concede that we did not provide any affidavits or any authentication for any of the documents that we provided. But to the extent that neither party did so, then that is a failure on a movement's part and a failure to establish a Rule 60B motion. But there are local rules, aren't there, that say that when counsel submits something to the court, there's a presumption that it is true and correct that counsel can be sanctioned if that's not the case? Your Honor, I'm not immediately familiar with that rule, but that sounds like a good rule, and I, of course, trust Your Honor that that's... Okay. Thank you. Thank you. Thanks very much. Thank you, Your Honors. Mr. Rizzi has reserved three minutes. Thank you, Your Honor. I'd like to pick up on opposing counsel's argument that there are not two competing versions of events here. Obviously, the facts are not in our possession. The record is unclear, but we have admissions from Mr. Sada on tape, and we do argue that it's reasonable to infer from those that he hired an investigator to follow Ms. Galan. So that's the version of events that we're arguing. And in other cases, such as Vignigny, Flax, and even the Gomez case that Mr. Sada cites in his brief at page 13, this court has generally accepted a move-in's allegations as true for purposes of deciding whether a hearing is required. To address the argument about her address again, to clarify for the record, Ms. Galan never actually identified which address she gave him was her home address. She provided two different addresses and did not identify either of them as her residence. To respond to counsel's argument about us not seeking an order of protection, we did not think it was necessary because the district court— I mean, did you dispute that one of them was, in fact, her address? Yes, one was her address, but one was not her residential address. She provided two different addresses and a WhatsApp message and did not say, this is my address. She said, this is where you can send Bradley the supplies. So— Oh, right, but I think the inference the district court was drawing is that she doesn't seem concerned about hiding her address if she, in fact, provided it. It's true she didn't identify it necessarily as her address, but it wouldn't be hard if somebody really were looking to harm somebody to investigate two different addresses and see if—whether either one of them is her genuine address. Is that not a reasonable inference from the fact that she provided the address? Again, at the time, I mean, she was not aware that he had hired an investigator and she also is giving a U.S. address, which is not indicative of what he would do to her in Italy if he did the same thing and hired an investigator there. And that really goes to why we didn't seek an order of protection. We thought he would comply with the directive not to make any effort to find her. Clearly, that's not true. And as to whether—Mr. Min says that there are no issues with supervised visitation in the U.S. Our response would be, of course not, because he was on his best behavior here, but that's, again, not indicative of what will happen in Italy. And we would also note that Mr. Sada has not spoken to his child in more than a year. So this record that Mr. Min— But you can make inferences about what would happen in Italy based on what happened in the U.S., but your whole argument that he hired investigators to find her U.S. address relies on the proposition that the district court should have made inferences about what would happen in Italy based on what happened in the U.S. Aren't you shifting the argument here? Well, the inference would be that he is more likely to do something to harm her in Italy where he has more resources, which I think is a completely reasonable inference. The inference that what she does in the U.S. is a reflection against her of what she fears about Mr. Sada if she's relocated to Italy is not a reasonable inference. So in some—my last note, I would just like to emphasize the, you know, looking at the district court's findings after the bench trial. It found that Mr. Sada was violent, abusive, had an uncontrollable temper, threatened to kill Moskalon, and was not credible. So in light of those findings, it was not appropriate to credit the representation of Mr. Sada's counsel, which depended on what Mr. Sada told him. The best measure of what Mr. Sada meant are his own words when he thought nobody was recording. And if his own words are to be believed, Mr. Sada cannot be trusted to stay away from Moskalon, regardless of whether a court order currently exists in Italy. If he is willing to— Okay, thank you. Thanks, Mr. Rizzi. I think we have the argument, and we're grateful to your argument today and also grateful to Mr. Min, both excellent arguments. We will reserve the decision.